**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 12-cv-02595-WYD-MEH**

MALIBU MEDIA, LLC.,

      Plaintiff,

v.

JOHN DOES 1-37,

      Defendants.

_____/

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO SHOW CAUSE ORDER**

**I.  INTRODUCTION**

Plaintiff respectfully requests the Court find joinder of the Defendants proper.  This decision would be consistent with Supreme, Circuit and District Courts' precedents.  It is based upon law applied in all types of cases.

In BitTorrent cases, some courts have chosen to sever in an effort to nullify and impair Plaintiff's rights and discourage Plaintiff from bringing suits.  In these situations, courts often determine that Plaintiff has failed to demonstrate the defendants acted in concert and impute on Plaintiff and unsubstantiated improper purpose.  As explained below, it is neither a requirement for the defendants to act in concert, nor does Plaintiff bring these cases with an improper purpose.  The rule requiring Plaintiff to demonstrate the Defendants acted in concert, or directly share the infringing content with each other is inconsistent with Supreme Court precedent and the policies underlying Rule 1 and Rule 20.

The Copyright Act provides a right for copyright holders to bring suit and seek redress for those that infringe its content through the internet.  The accusation that Plaintiff is doing something improper is offensive and persecutes the victim of a statutory outlawed tort.  The

1

attacks by the Doe Defendants have been constantly aimed at painting this picture. But ironically, no adverse action has been found. Malibu Media brings suit against 1% of the people who steal its content. Malibu Media deserves the same rights as any other corporate entity. Courts should not seek to invent or interpret rules to nullify Plaintiff's rights. This goes against the entire concept of what law stands for in our society. It undermines the public faith in the judicial system when courts interpret rules to reach a conclusion as oppose to applying the law in a fair and impartial way.

The Honorable Judge Hegarty, who has been managing these cases for most of the past year, stated in open court that he "took an oath" to apply the law and would not wrongly interpret the law simply to impede Plaintiff's ability to bring these cases. He has additionally noted that Plaintiff has not given him any reason to suspect an abuse of the litigation system.

Courts that have seriously analyzed the issues with the technology involved and applied the law to the facts have found joinder to be proper. See e.g. Malibu Media, LLC v. John Does 1-5, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. 2012). "[T]he nature of the technology compels the conclusion that defendants' alleged transactions were part of the same "series of transactions or occurrences.'" Id. at *4. Here, the Defendants conduct through the BitTorrent technology compels the conclusion that joinder is proper. Plaintiff asks that this Court not consider it differently because of the content of the copyrighted work or the proliferation of law suits. As the Central District of Illinois recently noted, "the proliferation of these types of lawsuits would be expected given the alleged infringement by thousands of people." Patrick Collins, Inc. v. John Does 1-9, 12-CV-3161, 2012 WL 4321718 (C.D. Ill. 2012).

## II.    OVERVIEW OF THE BITTORRENT PROTOCOL

"BitTorrent is one of the most common peer-to-peer file sharing programs. Plaintiffs assert that it is estimated that users operating BitTorrent account for over a quarter of all internet

traffic." Malibu Media, LLC v. John Does 1-15, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. 2012). BitTorrent operates by breaking a large file into hundreds or thousands of individual pieces. Malibu Media, LLC v. John Does 1-5, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. 2012). These pieces are distributed amongst other individuals who are downloading the exact same file. Id. "When other users, known as 'peers,' download the torrent file, the BitTorrent protocol signals that those peers are seeking to download the original file, and the seeder begins to distribute pieces to those users." Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. 2012). "The ability of a peer to download pieces of a file simultaneously from any number of other members of his swarm increases the likelihood that he will be able to utilize the entirety of his downloading bandwidth while decreasing the uploading bandwidth that any given member of the swarm will be required to sacrifice. The protocol, in short, is highly efficient for its users." Malibu Media, LLC v. John Does 1-5, 12 CIV. 2954 NRB, 2012 WL 3641291, *2 (S.D.N.Y. 2012).

Thus, instead of one large slow computer-to-computer transaction between two users, BitTorrent engages in numerous smaller, simultaneous, and much faster transactions. "The more computers involved in the swarm, the faster the file transfer occurs because there are more sources of each piece of the file."[1] "The efficacy of BitTorrent is therefore dependent on users sharing the pieces of a file they have already downloaded. To this end, BitTorrent has a built-in "tit-for-tat" incentive system that punishes users—by means of a slower download speed—who inhibit or are otherwise restricted in their uploading capability." Id. "[B]ecause of the nature of the BitTorrent protocol, each defendant's participation in the swarm facilitated, even if only indirectly, the participation of the other defendants who followed in time." Id. at *3.

---

[1] From http://computer.howstuffworks.com/bittorrent2.htm, last accessed 10.11.12

## III.    JOINDER IS PROPER

Fed. R. Civ. P. 20 permits joinder when plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action."  Rule 20(a) not only permits permissive joinder when there is the same transaction or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability.   Plaintiff has done both here.

"'With the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency,' requiring greater use of the more liberal joinder procedures."  Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1094 (2d Cir. 1992) (quoting 6A Wright, Miller & Kane § 1581).  In light of this idea, Judge Arguello noted, "it is difficult to see how the sharing and downloading activity [of individuals using the BitTorrent protocol in the same swarm] could **not** constitute a 'series of transactions or occurrences' for purposes of Rule 20(a)."  Patrick Collins, Inc. v. John Does 1-15, 11-CV-02164-CMA-MJW, 2012 WL 415436 (D. Colo. 2012).

### A.    The Infringement Occurred Through a Series of Transactions

For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder to be proper when there is something other than a direct transaction.  "Series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

Recently, Judge Randon in the Eastern District of Michigan properly analyzed the facts in a near identical case, expending substantial effort to understand the allegations in the complaint and the applicable law.  Judge Randon found that the logical relationship test was satisfied by the link of transactions from the initial seeder, spread throughout the swarm, to the other infringers.

> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

<u>Patrick Collins, Inc. v. John Does 1-21</u>, 282 F.R.D. 161, 167 (E.D. Mich. 2012) <u>report and recommendation adopted,</u> 11-15232, 2012 WL 4498373 (E.D. Mich. 2012).

Judge Randon explained that it not necessary for the Defendants to act in concert. "Several other courts have found joinder improper due to a lack of a concert of action. But, a concert of action is not required since Plaintiff alleges a right to relief severally against Defendants. Alleging a right to "several" relief is a proper route to joinder." <u>Id.</u>  Indeed, Judge Randon specifically distinguished and explained the improper reasoning in <u>Hard Drive Productions,</u> a case often relied upon for severance.

> The *Hard Drive Productions* court also reasoned that the various defenses may serve to demonstrate that joinder is improper. *See Hard Drive Productions,* 809 F.Supp.2d 1150 at 1164. However, "[t]he second prong of Rule 20(a) requires only that there be some common question of law or fact ... not that all legal and

factual issues be common to all [defendants]." *Disparte v. Corporate Executive Board,* 223 F.R.D. 7, 11 (D.D.C.2004). The court in *Hard Drive Productions* decided that a plaintiff must show that the defendants were in the same swarm at the same time. *Hard Drive Productions,* 809 F.Supp.2d at 1164. This requirement, however, overlooks the thrust of the allegation that Defendants were part of the same swarm. That Defendants were all part of the same swarm demonstrates that they downloaded the Movie through a series of uploads and downloads from the same initial seeder.

Id. at 168 (distinguishing Hard Drive Productions, Inc. v. Does 1-188, 809 F. Supp. 2d 1150, 1162 (N.D. Cal. 2011).

    i.   The Supreme Court Encourages Joinder

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).

The Supreme Court analyzed the principles of joinder in United States v. Mississippi, 380 U.S. 128 (1965), finding that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote.  Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew each other, or of each other's actions the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact.  Id. at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color.  On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

Id. at 142.  Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, it is not necessary for each of the Defendants to have directly interacted with each other Defendant, or have shared a piece of the file with each and every Defendant when downloading the movie.  The Defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers.  In doing so, the Defendants all acted under the same exact system.  Just as it was not alleged in United States v. Mississippi that the registrars shared with each other their efforts to prevent African Americans from voting, it is not necessary for the Defendants to have shared the pieces of the movie with each other.  It is sufficient that the Defendants shared pieces that originated from the same exact file, and opened their computer to allow others to connect and receive these pieces.

ii.  Similar District Court Rulings in the Tenth Circuit Have Upheld Joinder

This interpretation that joinder is proper is consistent with holdings by this Court and other courts in the Tenth Circuit. In B & R Plastics, Inc. v. Kikkerland Design, Inc., 08-CV-02646-REB-MEH, 2009 WL 3698528 (D. Colo. Nov. 2, 2009) this Court held joinder was proper when thirteen defendants were joined in a patent infringement case.  All of the defendants had infringed on the same two patents by manufacturing, marketing, and selling the products using the same importer.  Id. at *3.  "[T]he Plaintiff will likely introduce the same or similar evidence against each of the defendants in this case. Thus, applying a flexible definition of 'transaction,' the Court concludes that the alleged infringements by the defendants are logically related sufficient to satisfy Rule 20(a)(2)'s requirement."  Id.

The factual similarity in this case is more alike than the factual similarity found to properly support joinder in B & R Plastics.  Here, common allegations are that all of the defendants exchanged the exact same piece of digital information in a closed system.  All

7

defendants delivered that piece to the same investigative server.  In B&R Plastics, the properly joined defendants alleged to have only infringed the same products because of a common distributor.  There is no indication that the defendants worked together to infringe the Plaintiff's product, nor that the infringements occurred within a near time frame.  Like in US v. Mississippi, the defendants were properly joined because their infringement occurred under the same system.  Here, at this stage of the litigation, every element of the claim against defendants is identically the same and there is not one material fact that is distinguishable amongst defendants that would justify finding severance appropriate.

In B & R Plastics this Court also held that joinder was proper because each infringement involved the same legal theory.  B&R Plastics, at *3.  The Court noted that, just as in this case, the factual allegations are the same at this pretrial stage.  Id.

> [T]he Court finds that the claims against all defendants involve at least one common question of law or fact. In the Amended Complaint, the Plaintiff seeks recovery of its damages under identical legal theories against each defendant. As noted above, the factual allegations against each defendant are the same at this pretrial stage; the Court acknowledges that certain facts may change through discovery, but only some, not all, questions of law or fact must be common for joinder to be proper.

Id.

This analysis is consistent with other holdings in the Tenth Circuit.  In DIRECTV, Inc. v. Barrett, 220 F.R.D. 630 (D. Kan. 2004) the court held joinder was proper when Defendants had intercepted and decrypted DIRECTV's satellite signals to gain free viewing of the television programming.  In DIRECTV the defendants had only used the same type of device to intercept DIRECTV's signal.  Id.  The device did not rely on the defendants' joint participation with each other (like in this case), nor did DIRECTV allege the defendants were even aware of each other's actions.  The court held the conduct arose out of the same transaction or occurrence because the information was discovered through the same investigation.  Id. at 632.

8

> In each case, the records and other information that serve as the basis of DIRECTV's claims arise from the same investigations and raids. DIRECTV <u>will likely introduce similar or identical evidence against each of the defendants in each case</u>. The court concludes that, applying a flexible definition of "transaction," the claims against the defendants have a "logical relationship" such that they may be found to "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences."

<u>Id</u>. Likewise, in this case, Plaintiff identified the infringement through the same investigation. Further, Plaintiff pled that the defendants materially aided each other in infringing Plaintiff's trademark, by participating in the same BitTorrent swarm.

      B.     <u>There Are Common Issues of Fact and Law</u>

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact.  "The Plaintiff meets this requirement.  In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders."  <u>Nu Image, Inc. v. Does 1-3, 932</u>, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012).  The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant."  <u>Call of the Wild Movie v. Does 1-1,062</u>, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011).

"Here, common questions of law and fact are present. Defendants are all accused of violating the same copyright laws. Additionally, the interconnectedness of using BitTorrent to complete the alleged acts creates common questions of fact. Consequently, we find that this low standard is satisfied."  <u>Malibu Media, LLC v. John Does 1-15</u>, CIV.A. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012).

      C.  Joinder is Proper Because Plaintiff Properly Pled Defendants Were Jointly and Severally <u>Liable</u>

Joinder is proper here because Plaintiff properly pled the Defendants are jointly and severally liable.  See Genetic Technologies Ltd. v. Agilent Technologies, Inc., 11-CV-01389-WJM-KLM, 2012 WL 1060040 (D. Colo. Mar. 28, 2012) ("It is uncontested that Plaintiff does not assert joint or several liability here, which would be a separate basis for joinder.")  "It is clear that where defendants are alleged to be jointly liable, they may be joined under Rule 20 because the transaction-or-occurrence test is always satisfied." In re EMC Corp., 677 F.3d 1351, 1356 (Fed. Cir. 2012).-

D.  Joinder Promotes Judicial Efficiency

This Court has held that joinder of the defendants creates judicial efficiency, particularly at this stage of the litigation process and will not prejudice any party.  "The Court finds that joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency. See id. at 344 ('joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants.')" Patrick Collins, Inc. v. John Does 1-33, 11-CV-02163-CMA-MJW, 2012 WL 415424 (D. Colo. Feb. 8, 2012).

Recently, the Honorable Judge Hegarty noted that joinder at this stage is judicially efficient and severing the Defendant's could affect the ability to receive the Defendant's information as many ISPs have limited data retention periods.

> [T]he Court observes that severing defendants would delay, but not eliminate, Plaintiff's efforts to obtain Doe # 2's identifying information from Comcast. Simply put, severance affects the timing of disclosure but not the underlying right. In this context, such a delay may prove fatal to Plaintiff's claims insofar as Plaintiff alleges that the information it seeks is subject to destruction. (Docket # 6 at 5.) Given the inevitable disclosure of the information at issue in this subpoena, it seems judicial efficiency is best promoted by declining to reach the question of joinder at this time.

Malibu Media v. John Does 1-6, 12-CV-00845-MSK-MEH, 2012 WL 3590906 (D. Colo. 2012).

## IV.    PLAINTIFF WILL SUFFER UNDUE PREJUDICE IF THE COURT SEVERS

In <u>Malibu Media, LLC v. John Does 1-5</u>, 12-CV-1405-WJM, 2012 WL 3030300 (D. Colo. 2012) the Honorable Judge Martinez found that Plaintiff will suffer no undue prejudice if the Court severs and requires Plaintiff to pay separate filing fees.  Plaintiff respectfully disagrees. First, as a practical matter, not every Doe Defendant will be identified through discovery.  From Plaintiff's experience, approximately 10% of all Doe Defendants result in a discovery failure when the Internet Service Provider ("ISP") is unable to correlate an IP address with a person. Discovery failures increase over time.

Second, Plaintiff will often not pursue its claims against many Doe Defendants.  As an example, once receiving discovery Plaintiff will learn that some Doe Defendants are active duty military, a coffee shop with open wireless, or have some other circumstance that would prevent Plaintiff from pursuing its claims.  This will inevitably reduce the number of Defendants joined together.  Ultimately, if Plaintiff has to pursue each Defendant individually without knowing his or her identity, Plaintiff will be left with less latitude to evaluate cases and make reasonable resolutions including the decision not to prosecute.

Third, it is simply impossible for Plaintiff to pay a filing fee for each individual that infringes its movies on the Internet.  The creators and owners of Malibu Media work tirelessly to create an artistic and unique product, which has evinced a significant demand.  Malibu Media's business focuses around their online website X-Art.com.  If one searches for X-art.com online, the official site will be followed by hundreds of illegal websites filled with unauthorized versions of Malibu Media's videos available for free.  Malibu Media believes firmly that it must exercise its rights under the Copyright Act to prevent infringement.  Otherwise, it faces an immediate and serious risk that its popular website will go out of business.  It is simply impossible to compete with free.

In its efforts to fight piracy, the creators of Malibu Media invest significant resources in pursuing all types of anti piracy enforcement such as Digital Millennium Copyright Act ("DMCA") take down notices and direct efforts aimed at infringing websites.  Despite sending thousands of DMCA notices a day, the infringement continues.  Malibu Media's movies are constantly illegally streamed and made available for download.  Malibu Media does not seek to use the Court system to profit from the infringement like some courts have suggested.  Instead, it seeks to use every legal right that has been granted to it under the United States Copyright Act to stop people from stealing its movies.  It has no other choice.  Plaintiff faces upwards of 60,000 infringements through BitTorrent per month.  Without these suits, infringers would feel free to take without consequence.

Malibu Media's goal is to successfully sue the most egregious infringers and at the same time establish a significant deterrent for those tempted to take its products for free.  Since January 2012, Malibu Media has provided the federal judiciary with $118,300.00 in federal filing fees, an amount significantly more than many corporations.  Malibu Media seeks to sue roughly 600 individuals a month, or roughly one percent of the infringement it faces.  If it were forced to pay filing fees for each defendant in that one percent, it would face filing fees of over $200,000 a month.  This is simply beyond its financial capabilities as a company.

In order for its litigation to have any deterrent effect, Plaintiff must sue enough people for an individual to have a reasonable belief that if they break the law, they will be penalized.  As the former Register of Copyrights, Mary Beth Peters stated to the Senate Judiciary, "[w]hile we would like to think that everyone obeys the law simply because it is the law and out of a sense of

obligation, we also know that laws without penalties may be widely ignored."[2]

Recently, the District Court of Columbia examined the issue of filing fees in copyright infringement cases in an evidentiary hearing on the issue of joinder.  "The Movant ISPs acknowledged that the plaintiff would not be able to protect its copyright if the Court were to sever the unknown defendants in this action due to the cost of filing an individual lawsuit for each of the thousands of IP addresses identified as being used for allegedly online infringing activity. Hearing Tr. at 127–28 (Apr. 27, 2012)."  AF Holdings LLC v. Does 1-1,058, CIV.A. 12-0048 BAH, 2012 WL 3204917 (D.D.C. 2012).  Judge Howell expressly found that individual filing fees would impossibly burden a plaintiff's Petition Clause right.

> Severing the Doe defendants would essentially require the plaintiff to file 1,058 separate cases, pay separate filing fees, and obtain 1,058 separate subpoenas for each of the Listed IP Addresses. This burden for the plaintiff—not to mention the judicial system—would significantly frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in the alleged infringing activity. Moreover, such an outcome would certainly not be in the "interest of convenience and judicial economy," or "secure the just, speedy, and inexpensive determination of th[e] action." Lane, 2007 WL 2007493, at *7 (declining to sever defendants where "parties joined for the time being promotes more efficient case management and discovery" and no party was prejudiced by joinder).

Id. at *13.  (Emphasis added).

This Court has also addressed the issue of filing fees in copyright infringement actions and noted that requiring a plaintiff to pay the filing fees for each defendant limited its ability to protect its rights, contrary to Fed. R. Civ. P. 1.  See Patrick Collins, Inc. v. John Does 1-15, 11-CV-02164-CMA-MJW, 2012 WL 415436 (D. Colo. 2012).

> If the Court were to sever the Doe Defendants at this juncture, Plaintiff would face significant obstacles in its efforts to protect the Work from copyright infringement, which would only needlessly delay the suit. Furthermore, Plaintiff

---

[2] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

would need to file individual cases, which would require Plaintiff to pay the Court separate filing fees in each case, further limiting its ability to protect its legal rights. *See* Fed.R.Civ.P. 1 (providing that the Federal Rules of Civil Procedure should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding."). Thus, Plaintiff would be substantially prejudiced by severance.

Id. at *3.

The Honorable Judge Martinez, citing a court in the Central District of California, sought to specifically reduce Plaintiff's ability to bring its claims for copyright infringement by severing. "By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement—making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it." Malibu Media, LLC v. John Does 1-5, 12-CV-1405-WJM, 2012 WL 3030300 (D. Colo. 2012).   This action was justified on the basis that Plaintiff had not demonstrated intent to litigate.   Yet, in this district Plaintiff has pursued numerous actions against individuals, complied with all court requests, has entered discovery, and will continue to litigate its claims.  The Court should not nullify Plaintiff's rights under the Copyright Act and the Petition Clause of the United States Constitution with speculative justifications that have not proved to be present.  Indeed, the Court should not punish Plaintiff, regardless of the copyrighted content, for seeking to protect its property under law.

Congress enacted the Digital Theft Deterrence Act of 1999 to deter online infringement by increasing the penalties therefore.  See Sony v. Tennenbaum, 660 F.3d 487, 497 (1st Cir. 2011) (citing the Congressional record and holding that non-commercial individuals commit infringement by distributing copyrighted works online).   The Supreme Court has held file sharing of copyrighted works is infringement.   See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd. 545 U.S. 913, 125 S.Ct. 2764 (2005). Two circuit courts opined that Rule 45

subpoenas may be used to identify online copyright infringers.   See In re Charter Communications, Inc. Subpoena Enforcement Matter, 393 F.3d 771, 774 (8th Cir. 2005); Arista Records, LLC. v. Doe 3, 604 F.3d 110 (2d Cir. 2010).   Courts unanimously hold that Plaintiff's First Amendment right under the Petition clause to bring a suit for infringement outweighs any First Amendment right proffered by an alleged infringer.   See e.g., Sony Music Entertainment, inc. v. Does 1-40, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (and the cases citing thereto).

The only way to truly enforce one's copyrights against online infringement is to bring suits like the one currently before this Court.   Severing Defendants impermissibly burdens Plaintiff because it cannot bring the petitions that need to be brought.   Here, Plaintiff would simply be unable to afford even 1% of the individual actions against infringers each month. Plaintiff would not be able to effectively deter infringement.   With out this ability, copyright owners would have a right without a remedy.   Any such state of affairs would violate Chief Justice Marshall's often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury." Marbury v. Madison, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court permit joinder and not sever the Defendants in this action.

Dated: October 12, 2012

Respectfully submitted,

By: /s/Jason Kotzker
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
Attorney for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 12, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: <u>/s/</u>*<u>Jason Kotzker</u>*